UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AILEEN MORALES,

                              Plaintiff,                    Case # 17-CV-341-FPG

v.                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Aileen Morales brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 9. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On September 18, 2013, Morales protectively applied for SSI with the Social Security Administration ("the SSA"). T.[1] 236-41. She alleged disability since March 1, 2009 due to a hernia, liver problems, psoriasis, ovarian cysts, and depression. T. 124. On March 29, 2016, Morales and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Bryce Baird ("the ALJ"). T. 65-100. On May 25, 2016, the ALJ issued a decision finding that

---

[1] "T." refers to the administrative record in this matter. ECF No. 7.

1

Morales was not disabled within the meaning of the Act. T. 29-48. On February 23, 2017, the Appeals Council denied Morales's request for review. T. 1-7. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Morales's claim for benefits under the process described above. At step one, the ALJ found that Morales had not engaged in substantial gainful activity since the

application date. T. 37. At step two, the ALJ found that Morales has a hiatal hernia, depression, and anxiety, which constitute severe impairments. T. 37-38. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. T. 38-39.

Next, the ALJ determined that Morales retains the RFC to perform medium work[2] with additional limitations. T. 39-42. Specifically, the ALJ found that Morales cannot climb ladders, ropes, or scaffolds, or crawl; can frequently stoop and bend; can perform only simple, routine tasks and occasionally interact with the public; cannot perform work that requires her to communicate in English; and requires work that involves the same tasks everyday with little variation in location, hours, or tasks. T. 39.

At step four, the ALJ indicated that Morales has no past relevant work. T. 42. At step five, the ALJ relied on the VE's testimony and found that Morales can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. T. 43. Specifically, the VE found that Morales can work as a laundry laborer, industrial cleaner, and laundry marker. *Id.* Accordingly, the ALJ concluded that Morales was not disabled. T. 43-44.

## II. Analysis

Plaintiff argues that remand is required because: (1) the ALJ's findings are internally inconsistent and contain material errors; (2) the physical RFC finding lacks substantial evidence; and (3) the mental RFC finding lacks substantial evidence. For the reasons that follow, the Court

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

4

finds that the physical RFC finding lacks substantial evidence. Accordingly, remand is required for further administrative proceedings.

      **A.     The Internal Inconsistencies and Errors in the Decision are Harmless**

Plaintiff argues that remand is warranted because inconsistencies and errors in the ALJ's decision were material to the ALJ's finding that Plaintiff is not disabled. Furthermore, Plaintiff argues that these inconsistencies and errors were misleading and confusing because she does not speak English and, therefore, remand is necessary to provide Plaintiff with a clear understanding of the decision. In particular, Plaintiff notes the ALJ inconsistently stated in his decision that Plaintiff was 50-years-old on the application date and was thus defined as a younger individual, age 18-49. T. 42. The ALJ further erred stating that Plaintiff can communicate in English (*id*.), despite finding at step three that Plaintiff is capable of performing work that does not require communication in English (T. 39). For the reasons set forth below, the Court finds that the inconsistencies within the ALJ's decision are harmless error.

As noted above, a VE and a translator were present at Plaintiff's March 2016 hearing. Plaintiff testified that she was born on December 23, 1962. T. 72. In a hypothetical given to the VE that assumed Plaintiff's stated age, education, and past work experience, the ALJ included the limitation of being unable to communicate, read, or write in English. T. 97. The VE testified that based on this information, there were jobs in the economy that the hypothetical individual could perform, including laundry laborer, industrial cleaner, and garment marker. T. 96-97. The ALJ used this testimony, based on Plaintiff's correct age and communication abilities, to conclude that Plaintiff was not disabled. T. 43.

Where the correction of a factual error within an ALJ's decision would not change the outcome, that error is deemed harmless. *See Gray v. Colvin*, No. 12-CV-6485L, 2014 WL

4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (correcting the ALJ's minor factual error would not change the outcome of the case, and as such, the error did not constitute grounds for remand); *Duvergel v. Apfel*, No. 99 CIV. 4614 (AJP), 2000 WL 328593, at *11 (S.D.N.Y. Mar. 29, 2000) (collecting cases showing that factual errors that would not change the outcome of a case are harmless).

The ALJ's ultimate finding that Plaintiff was not disabled was based on the VE's testimony that considered Plaintiff's correct age and inability to communicate in English. The VE did not base her testimony on the factual errors the ALJ included at step four in his decision. Any correction made to the step four errors would have no bearing on the VE's testimony or the ALJ's step five finding based on that testimony. Accordingly, the Court finds that remand on this basis is not warranted.

To the extent Plaintiff argues that remand is warranted because the ALJ's minor factual errors were misleading and confusing to Plaintiff, the Court finds this argument meritless. Plaintiff provides no legal basis for this argument. Furthermore, as the Commissioner points out, Plaintiff has been represented by counsel throughout the administrative proceedings, and her counsel can presumably provide guidance and clarification to any confusion she may have.

### B. Medical Opinions

Plaintiff also contends that the mental and physical RFC findings lack substantial evidence. The record contains several medical opinions pertinent to this argument that the Court summarizes below.

#### 1. Opinion of Consultative Examiner Dr. Hongbiao Liu

Dr. Liu examined Plaintiff on November 13, 2013. T. 392-95. Plaintiff complained of a history of diabetes, bilateral foot pain, anxiety, and depression. Plaintiff reported that she had

hernia repair surgeries in 2010, 2011, and 2012. T. 392. Plaintiff also reported that she cooks seven times per week; does laundry once per week; showers, bathes, and dresses herself daily; and enjoys watching TV, listening to the radio, and socializing with friends. T. 392-93.

Upon physical examination, Plaintiff had a normal gait but could not perform heel and toe walking due to bilateral foot pain or squat due to obesity and bilateral foot pain. She needed no help changing or getting on or off the examination table. T. 393. All system findings were unremarkable. T. 393-94. Dr. Liu diagnosed Plaintiff with diabetes with diabetic neuropathy, hyperlipidemia, anxiety, depression, and obesity. Dr. Liu opined that Plaintiff had mild to moderate limitations for prolonged walking, bending, and kneeling. T. 394.

The ALJ gave "great" weight to Dr. Liu's opinion. T. 41. The ALJ noted Dr. Liu's opinion was consistent with the record, showing some limitations in exertional and postural activities. The ALJ also noted that Plaintiff's daily activities and history of treatment for her hiatal hernia supported Dr. Liu's limitations. *Id.*

### 2. Opinion of Consultative Examiner Dr. Kristina Luna

Dr. Luna performed a psychiatric evaluation of Plaintiff on November 13, 2013. T. 397-401. Plaintiff reported that she stopped attending school at the age of 14 or 15 in Puerto Rico and had been in a special education group since the second grade. Plaintiff had been trained in day labor tasks and worked as a housekeeper, cleaner, and maintenance worker at a grocery store before leaving work in 2006 due to a hernia. Plaintiff reported undergoing hernia repair surgeries in 2010, 2011, and 2012. Plaintiff also reported she had been in weekly therapy from 2008 until 2012 but had never been psychiatrically hospitalized. T. 397. She reported her depressive symptoms began at age 29 and included dysphoric mood, psychomotor retardation, crying spells, guilt, loss of usual interests, irritability, worthlessness, concentration difficulties, and social

7

withdrawal. Plaintiff's anxiety-related symptoms included excessive apprehension and worry, becoming easily fatigued, irritability, restlessness, difficulty concentrating, and muscle tension. Plaintiff reported that she experienced panic attacks two to three times per month. Plaintiff denied smoking, drinking alcohol, or using drugs. T. 398.

Upon examination, Plaintiff was cooperative and demonstrated adequate social skills. Dr. Luna reported Plaintiff's hygiene was good, and her eye contact was appropriate. Plaintiff's motor behavior was restless, and her affect was restricted. Her attention and concentration were mildly impaired due to emotional distress; she could count to five and complete simple subtraction, but was unable to complete simple division or do serial 3s from 20. T. 399. Plaintiff's recent and remote memory skills were also mildly impaired. Dr. Luna noted Plaintiff's intellectual functioning appeared to be in the borderline range, though it was not fully assessed, and her insight and judgment were both good. *Id*. Plaintiff reported that she could cook and do laundry, but her daughter cleaned and shopped for her. Plaintiff could not drive or take public transportation independently, and she did not have friends upon whom she could rely. She reported spending time with her family. T. 400.

Dr. Luna diagnosed Plaintiff with major depressive disorder (moderate), panic disorder with agoraphobia, borderline intellectual functioning, hernia, diabetes, high cholesterol, and ankle and foot problems. *Id*. Dr. Luna opined that Plaintiff had no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, make appropriate decisions, and relate adequately to others. Plaintiff was mildly limited in her ability to learn new tasks and appropriately deal with stress. Plaintiff was moderately limited in her ability to maintain attention and concentration or perform complex tasks independently. Her difficulties were caused by distractibility. Dr. Luna further opined that

8

Plaintiff's psychiatric problems did not appear significant enough to interfere with her ability to function on a daily basis. *Id*.

The ALJ assigned "great" weight to Dr. Luna's opinion. He noted it was consistent with the medical evidence of record showing mild-to-moderate limitations from Plaintiff's depression and anxiety. T. 42.

### 3. Opinion of Primary Care Physician Dr. Glenn Smith

On April 5, 2012, Plaintiff's primary care physician Dr. Smith completed a Medical Examination for Employability Assessment. T. 332-33. He noted that Plaintiff had multiple joint pain, headaches, diabetes, and post-surgical abdominal pain. T. 332. Dr. Smith opined that Plaintiff was unable to work at that time. He expected her restrictions to last at least 12 months, at which time she should be re-evaluated. T. 333.

The ALJ gave "little" weight to Dr. Smith's opinion, noting that Dr. Smith provided no specific functional limitations or any basis for his opinion. T. 42.

### 4. Opinion of State Agency Medical Consultant Dr. H. Tzetzo

State agency medical consultant Dr. Tzetzo provided a Mental RFC assessment on December 27, 2013 after reviewing Plaintiff's application and available medical files. T. 130-34. Dr. Tzetzo opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. T. 131-32.

The ALJ gave "significant" weight to Dr. Tzetzo's mental RFC assessment, noting it was consistent with Plaintiff's "treatment for mild-to-moderate emotional and mental impairments and ascribing limitations on work that is more than simple and repetitive." T. 42.

5. **Prior RFC Finding**

ALJ Timothy McGuan made an RFC finding on March 21, 2012, in connection with Plaintiff's previous disability application. T. 101-22. Following a hearing and review of Plaintiff's medical record, ALJ McGuan found Plaintiff had the severe impairments of recurrent ventral hernia with repairs done at least three times, generalized anxiety disorder, and poly-arthralgia. T. 109. ALJ McGuan determined that Plaintiff had the RFC to perform light work, except she required a sit and stand option after 45 minutes; was limited to occasional balancing, stooping, kneeling, crouching, and crawling; could not climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally understand, remember, and carry out complex and detailed tasks; and occasionally interact with the public. T. 111.

ALJ Baird gave ALJ McGuan's RFC finding "partial" weight, noting that the postural and mental limitations remained relevant as per the medical evidence of record, though Plaintiff's exertional ability is not restricted quite as significantly as the evidence suggested at the prior adjudication. T. 42.

C. **The Physical RFC Finding Lacks Substantial Evidence**

Plaintiff contends that the ALJ's finding that she can perform medium work lacks substantial evidence. For the reasons set forth below, the Court agrees.

As noted in the ALJ's decision and the medical opinions of Drs. Liu and Luna, Plaintiff underwent hernia repair surgeries in 2010, 2011, and 2012. *See* T. 40, 392, 397. The ALJ's decision and the medical record indicates that Plaintiff also underwent a sleeve gastrectomy and hiatal

10

hernia repair surgery in January 2015. *See* T. 40, 435. At the March 2016 hearing, Plaintiff testified that she had recently been hospitalized for four days because her hernia was going to explode and she had an upcoming hernia surgery. T. 76, 79. Plaintiff testified that her biggest medical issue was her recurrent hernia, for which she has had several operations, and that her doctor has advised her not to pick up anything heavier than 10 pounds because it could make her hernia explode. T. 75, 86. The medical record indicates that Plaintiff underwent surgery to repair her hernia and remove her gallbladder on May 2, 2015. T. 800-04. Although it is included in the medical record, the ALJ's decision does not reference the May 2, 2015 surgery.

The ALJ relied heavily Dr. Liu's November 2013 opinion to support the RFC finding that Plaintiff could perform medium work. T. 39, 41. But Dr. Liu did not include any diagnosis related to Plaintiff's multiple hernia repair surgeries in his opinion. Furthermore, Dr. Liu rendered his opinion before the two additional hernia surgeries Plaintiff underwent before the ALJ made his final RFC finding. The Court finds that these circumstances render Dr. Liu's opinion stale and therefore his opinion cannot constitute substantial evidence to support the RFC finding.

A stale medical opinion does not constitute substantial evidence to support an ALJ's findings. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x (2d Cir. 2016) (summary order). The mere passage of time does not necessarily render a medical opinion outdated or stale; however, subsequent treatment notes indicating a claimant's condition has deteriorated may. *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309(MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded "great" weight to medical opinions rendered before

plaintiff's second surgery). Accordingly, Dr. Liu's 2013 opinion, which contained no lifting restrictions and did not consider the impact of Plaintiff's chronic hernia condition, was indisputably rendered stale by Plaintiff's two subsequent hernia repair surgeries. *See Morgan v. Berryhill*, No. 1:15-cv-00449(MAT) 2017 WL 6031918, at *4 (W.D.N.Y. Dec. 5, 2017) (treating physician's medical assessment was properly afforded less than controlling weight where it was based on an incomplete record and thus rendered stale by plaintiff's subsequent surgery).

Furthermore, Plaintiff testified that her doctor told her not to lift anything over 10 pounds at the risk of rupturing the hernia. T. 86. However, the ALJ's RFC finding that Plaintiff could perform medium work lacked any lifting restrictions and did not explain why lifting restrictions were not included. Medium work requires lifting up to 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c). In light of Plaintiff's testimony, and given the well-documented chronic nature of Plaintiff's hernia condition, the Court finds that the ALJ erred by relying on Dr. Liu's stale opinion. Accordingly, the Court finds that the RFC determination lacks substantial evidence and that remand for further consideration of the impact of Plaintiff's chronic hernia condition is appropriate. On remand, the ALJ should obtain an updated functional assessment from Plaintiff's surgeon, treating physician, or a consultative examiner, as appropriate.

      **D.**      **The Mental RFC Finding is Supported by Substantial Evidence**

Plaintiff also argues that the ALJ's mental RFC finding lacks substantial evidence. Specifically, Plaintiff relies on the portion of Dr. Luna's report stating that she was "moderately limited in her ability to maintain attention and concentration or perform complex tasks independently." T. 400. According to Plaintiff, this translates into Plaintiff being "off task" during a portion of the workday. *See* Pl.'s Mem. at 15 (noting that Dr. Luna's opinion "will no doubt

leave her 'off task' . . . to some extent"). Plaintiff further argues that the ALJ erred when he failed to determine what percentage of the workday Plaintiff would be "off task" due to her moderate limitations in maintaining attention and concentration.

Plaintiff provides no basis for her argument that "moderate" limitations in the ability to maintain attention and concentration translates into being "off task" for some percentage during the workday. Plaintiff notes that the VE testified that being "off task" for approximately 25-percent of the workday would preclude employment; however, Plaintiff provides no logical or evidentiary link between Dr. Luna's assessment and the VE's testimony. Furthermore, Drs. Luna and Tzetzo opined that Plaintiff had *no* limitations for following and understanding simple directions and instructions, performing simple tasks independently, maintaining a regular schedule, and making appropriate decisions. *See* T. 131-32, 400. These opinions correspond with the RFC finding that Plaintiff could perform simple, routine tasks and work that involved the same daily tasks with little variation in location, hours, or tasks. T. 39. Finally, Plaintiff's suggestion that the use of the term "moderate" to describe a claimant's ability to perform tasks warrants a finding that the claimant is totally disabled has been rejected by the Second Circuit. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding that a limitation to unskilled work accounted for the claimant's moderate limitations in maintaining concentration, persistence, and pace).

Accordingly, the Court finds that the mental portion of the RFC determination is supported by substantial evidence, and remand is not warranted on this basis.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this

opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: March 11, 2019
      Rochester, New York

                              HON. FRANK P. GERACI, JR.
                              Chief Judge
                              United States District Court